Kroger Babb and Louella Babb v. Commissioner. Kroger Babb v. Commissioner.
Babb v. Commissioner
Docket Nos. 53853, 53854.
United States Tax Court
T.C. Memo 1958-79; 1958 Tax Ct. Memo LEXIS 151; 17 T.C.M. (CCH) 391; T.C.M. (RIA) 58079; April 30, 1958
*151 Held, upon failure to prosecute, the deficiencies and additions to tax under sections 291(a) and 294(d)(2) of the Internal Revenue Code of 1939, for the years 1942 to 1945, inclusive, and 1948 to 1950, inclusive, are sustained. Held, further, respondent has failed to prove that a part of the deficiencies in income tax for the years 1942 to 1945, inclusive, and 1948 to 1950, inclusive, was due to fraud with intent to evade tax. W. Ralph Musgrove, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: These consolidated proceedings involve deficiencies and additions to tax as follows: Income Tax
Addition to Tax
Docket No.
Year
Deficiency
Sec. 293(b)
Sec. 291(a)
Sec. 294(d)(2)
53854
1942
$ 3,141.55
$ 1,570.78
1943
1,524.25
762.12
1944
12,628.46
6,314.23
$3,157.12
1945
22,119.84
11,521.92
5,529.95
53853
1948
64,770.20
32,385.10
1949
45,353.54
22,676.77
1950
41,986.25
20,993.13
$4,549.67
*152 No appearance by or on behalf of petitioner was made at the hearing. Absent any evidence on behalf of petitioner, deficiencies and additions to tax under sections 291(a) and 294(d)(2) as determined by respondent were sustained. The hearing proceeded on the question of fraud under section 293(b) of the Internal Revenue Code of 1939, the only remaining issue in the case. No issue has been raised concerning the statute of limitations. Findings of Fact Kroger Babb (hereinafter referred to as petitioner) and his wife, Louella Babb, resided in Wilmington, Ohio, during the years involved herein. Petitioner filed an individual income tax return for the calendar year 1942 with the then collector of internal revenue for the district of Georgia. Petitioner filed an individual income tax return for the calendar year 1943. The place of filing is undetermined. He did not file a return for the calendar year 1944. Petitioner filed an individual income tax return for the calendar year 1945 with the then collector of internal revenue for the first district of Ohio. Petitioner and his wife filed joint income tax returns for the calendar years 1948 to 1950, inclusive, with the then collector for *153 the first district of Ohio. From 1942 to 1945, petitioner was engaged as a booking agent and lecturer, on a commission basis, for the motion picture "Dust to Dust." Besides petitioner's own activities in connection with this picture, he had several units which exhibited the picture in various parts of the country and which paid him on a commission basis. Petitioner maintained no books or records of his activities in connection with "Dust to Dust," with the exception of some memoranda of expenditures. In 1945, petitioner became a partner in Associated Film Productions, a partnership which created and produced the motion picture "Mom and Dad." As was done with "Dust to Dust," road units were formed for the showing of the picture. When it was not possible to book a picture in a regular theater, petitioner would rent a theater and at the end of the engagement split the profits with the employees of the road unit. Petitioner kept no record of his income from this type of transaction. Aside from his continued interest in Associated Film Productions, petitioner was also an executive of Hygienic Productions, Inc., in 1948 and 1949, and Hallmark Productions, Inc., in 1950. Because of *154 petitioner's lack of books or records of his income and expenditures, respondent reconstructed petitioner's income by the net worth method. Petitioner's net worth on December 31, 1941, was not more than $312.66. Respondent determined petitioner's net worth on December 31, 1950, to be $369,376.43. Petitioner's net income as reported, and the amounts respondent determined to be unreported for the calendar years 1942 to 1945, inclusive, and 1948 to 1950, inclusive, are as follows: Unreported
Net Income
Reported
as determined
Year
Net Income
by Respondent
1942
$ 5,645.75 *
$ 9,625.03
1943
5,184.99 *
5,140.92
1944
0
29,636.10
1945
23,638.45
31,973.09
1948
42,688.72
104,300.81
1949
309.78
99,234.06
1950
84,194.76
60,174.39
When confronted with respondent's determinations of unreported net income petitioner, upon advice of counsel, made no attempt to account for the discrepancies between respondent's figures and those in his returns. Respondent found petitioner's reported net income to be correct in the years 1946 and 1947. Opinion The only issue *155 is whether a part of the deficiencies for each of the years involved was due to petitioner's fraud with intent to evade tax. The question of fraud is a factual one. Respondent must prove that petitioner omitted a portion of his taxable income from his income tax return for each of the years involved, and that such omissions were due to petitioner's fraudulent intent to evade taxes. To establish petitioner's omissions, respondent must prove income in excess of amounts of taxable income reported, and either establish a likely source from which unreported taxable income may have been realized, Holland v. United States, 348 U.S. 121 (1954), or negate possible nontaxable sources, United States v. Massei, 355 U.S. 595 (1958). The burden of proof is on the respondent, section 1112, Internal Revenue Code of 1939, and the evidence presented by him must be "clear and convincing." M. Rea Gano, 19 B.T.A. 518 (1930). Furthermore, the fact that deficiencies and certain additions to tax were sustained due to being presumptively correct is insufficient in and of itself to establish a prima facie case of fraud. Respondent must submit additional evidence in order *156 to discharge his burden of proof. In Oscar G. Joseph, 32 B.T.A. 1192, 1204, the Board of Tax Appeals (now Tax Court) stated: "* * * Failure to contest an adjustment made in determining the deficiency is not proof of fraud. The Commissioner can not sustain his burden of proof on a fraud issue by statements made in his notice of deficiency. James Nicholson, 32 B.T.A. 977. Those items must be disregarded in so far as the fraud issue is concerned." And, in James Nicholson, 32 B.T.A. 977, 989, it was stated: "* * * The mere fact that his return showed a net income for the taxable year 1929 in the sum of $40,424.66 and the respondent, in recomputing his tax liability, determined that the net income for that year was $73,435.38, by itself, does not establish fraud. If it did, then all taxpayers against whom deficiencies are determined would be guilty of fraud and subject to the imposition of a fraud penalty. * * *" In the more recent case of Drieborg v. Commissioner, 225 Fed. (2d) 216, affirming in part and reversing in part a Memorandum Opinion of this Court [13 TCM 170], the Sixth Circuit Court of Appeals said: *157 "At the outset it should be emphasized that the failure of the taxpayers to overcome the presumptive correctness of the deficiencies, even though those deficiencies cover a consecutive ten year period, cannot be regarded, in and of itself, as sufficient proof that the deficiencies or any part thereof were due to fraud on the part of the taxpayers. To hold otherwise would be to ignore the statute which imposes on the Commissioner the burden of proving fraud, and the often repeated admonition that such proof must be by clear and convincing evidence. Wiseley v. Commissioner, 6 Cir., 1950, 185 Fed. (2d) 263; Rogers v. Commissioner, 6 Cir., 1940, 111 Fed. (2d) 987, 989; Mitchell v. Commissioner, 5 Cir., 1941, 118 Fed. (2d) 308. There must be additional independent evidence from which fraudulent intent on the part of the taxpayer can be properly inferred. * * * "That the difference in the burden of proving ordinary tax deficiencies and civil fraud can have important practical results has long been recognized. 'As to the issue raised by [the Commissioner's] determination of fraud the burden is upon him; and he may fail to sustain such burden, notwithstanding *158 the determined and presumed error in the return. In other words, both parties may fail through inadequate proof on their several issues, and thus the deficiency would be sustained and the penalty set aside.' L. Schepp Co., 1932, 25 B.T.A. 419, 437. * * *" In support of his determination of fraud respondent introduced into evidence petitioners' tax returns, or copies thereof, for the years 1942, 1943, 1945, 1948, 1949, and 1950, and certificates of assessments and payments for the years 1942 to 1951, inclusive. Respondent also submitted a statement of net worth of petitioner and his wife as of December 31, 1950. The statement had been prepared by a public accountant, and given to a revenue agent by petitioner's representative. According to said statement, petitioner's net worth on December 31, 1950, was $421,909.80. Respondent's only other evidence was the testimony of Robert Herche, presently employed as a Group Supervisor in the Field Audit Division of the Internal Revenue Service. Herche, in the capacity of a deputy collector, had examined petitioners' tax returns for 1942, 1943, and 1945 to 1950, inclusive. Apparently Herche was not satisfied with petitioners' returns *159 and, upon finding that petitioner had no books or records of his activities, reconstructed petitioner's income by the net worth method. Herche testified that net worth computations disclosed petitioner's net worth to be $312.66 on December 31, 1941 and $369,376.43 on December 31, 1950, and also disclosed substantial amounts of unreported income for each of the years 1942 to 1950, inclusive, with the exception of 1946 and 1947. The alleged amounts of unreported income are set forth in the findings of fact. Herche further testified that petitioner, upon advice of counsel, would give no explanation of the alleged unreported income, nor would petitioner offer an explanation regarding the difference between respondent's net worth figure for December 31, 1950, and petitioner's accountant's net worth figure for that date. Respondent did not offer his net worth statements as evidence, nor did he make any effort to disclose the source of information upon which his net worth computations were based. In short, respondent's case is based almost in to upon the testimony of an internal revenue employee, the substance of said testimony being that net worth computations disclosed that petitioner *160 had unreported income of specified amounts during the years in issue, that petitioner kept no books or records of his activities, and that petitioner would not attempt to account for the unreported income as determined by respondent's net worth computations. After a thorough examination of the scanty record before us, we are compelled to conclude that respondent has failed to prove by "clear and convincing" evidence that a part of the deficiencies for each of the years in issue was due to fraud with intent to evade tax. Respondent has failed to heed this Court's often repeated admonition set forth in Henry S. Kerbaugh, 29 B.T.A. 1014, 1016 (1934), affd. 74 Fed. (2d) 749 (C.A. 1, 1935), that: "* * * A charge of fraud has always been regarded as a serious matter in the law. Not only is it never presumed, but the ordinary preponderance of evidence is not sufficient to establish such a charge. It must be proved by clear and convincing evidence. * * *
"* * * If not admitted it must be proved." * * * Decisions will be entered under Rule 50. Footnotes
*. These figures are income tax net income. Victory tax net income not shown.↩